**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE LETTER OF REQUEST ) | |
| FROM RUSSIA ) | |
| IN THE MATTER OF ) | Misc. No. 07- |
| A.V. BOIKOV ) | |

**GOVERNMENT'S MEMORANDUM OF LAW**
**IN SUPPORT OF APPLICATION FOR ORDER**

This memorandum of law is submitted in support of the Application for an Order pursuant to Title 28, United States Code, Section 1782, in order to execute a letter of request from Russia. A copy of the translation is attached.

FACTUAL BACKGROUND:

This investigation is being conducted by the Russian authorities who are investigating a case of alleged fraud.

EVIDENCE SOUGHT:

The Russian authorities seek information about a company that may reside in this District and the Delaware Secretary of State's Office. The authority for this Court to accede to this request is contained in Title 28, United States Code, Section 1782, which states in part:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the

court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The proper criteria for determining whether the court should exercise its discretion in favor of executing the request are outlined in *In Re Request for Judicial Assistance from the Seoul District Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted):

> Under the statute the only restrictions explicitly stated are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal.... [and] that the investigation in connection with which the request is made must relate to a judicial or quasi-judicial controversy.

Moreover, "(t)he judicial proceeding for which assistance is sought ... need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made." *In Re Letter of Request from the Crown Prosecution Services of the United Kingdom*, 870 F.2d 686, 687 (D.C. Cir. 1989).

The letter of request in this case shows that the information sought is for use in such proceedings in Russia and

hence the request comes well within those circumstances contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled <u>ex parte,</u> and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE**, the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____
David L. Hall
Assistant U.S. Attorney
1007 N. Orange Street
Wilmington, DE  19801
(302) 573-6277

Dated: 10/31/07

| | |
|---|---|
| Prosecutor General's Office<br>Russian Federation | Department of Justice<br>the United States of America |

Bolshaya Dmitrovka street, 15a
Moscow, Russia, GSP-3, 125993

June 26, 2006   #18/377429-06

*Request on Legal Assistance*

Dear Colleagues,

Prosecutor General's office of the Russian Federation expresses its deep respect to the Department of Justice of the United States of America and its gratitude for cooperation in legal matters.

Prosecutor General's Office of the Russian Federation is conducting criminal case #18/377429-06, initiated April 26, 2006, upon the signs of the crime, envisaged by part 4 article 159 of the Criminal Code of the Russian Federation (fraud), against Mr. A.V. Boikov and others, who obtained by deceit the right of demand of the monetary funds in the amount of RUR 834,375,001.28 (834,375,001 roubles 28 kopeek) from open Stock Company "Savings Bank of the Russian Federation" (hereinafter referred to as "Sberbank of Russia") (Attachments #1,2).

The investigation determined that to commit the crime, Mr. A.V. Boikov and other persons used fictitious agreements on economic activities and registration documents of a number of commercial organizations, which had been prepared by them beforehand.

Thus, while committing the crime, the accomplices used fictitious delivery agreement #56594-36, which was as if concluded July 23, 1996 in the city of Moscow between Stock Company of the Closed type "Leasing Centre of assistance to entrepreneurship" in the person of Mr. Igor Mikhailovitch Gulaga, its President, and Mr. Omar Oren, Director of company "Green Crown Corp." (15 East North St. in the city of Dover, County of Kent, 19901 State Dalaware, USA) (Attachments #3,4).

The conditions of this agreement stated the liability of the buyer—Stock Company of the Closed type "Leasing Centre of assistance to entrepreneurship" to pay USD 27,000,000 for timber processing machines to account #███████ of company "green Crown Corp.", opened in bank "CITIBANK"N.A." in the city of New York, USA (attachments #5,6,7,8).

As the Russian company did not execute the conditions of the agreement, the monetary funds were not transferred to the account of "Green Crown Corp.", the above mentioned volume (amount) of the debt was transferred under the agreement on the change of the party in the delivery agreement, dated April 23, 2002 from Stock Company of the Closed type "Leasing

Company "Kitano" and under agreement #2 on the change of the party in the delivery agreement, dated August 30, 2005, from Limited Liability Company "Kitano" to Limited Liability Company "Infoline", which was under control of Mr. A.V. Boikov.

At that there are not any economic reasons about the transfer of the debt to Limited Liability Company "Kitano" and Limited Liability Company "Infoline" in the agreements (Attachments #9,12).

August 22, 2005, with the participation of Mr. A.V. Boikov, an agreement was signed. according to the conditions of this agreement, company "Green Crown Corp" as if ceded its right of demand of USD 27,000,000 from Limited Liability Company "Kitano" to a number of companies which were under Mr.A.V. Boikov's control, namely: Closed Stock Company "Arctica", Closed Stock Company "Rusactive" and Closed Stock Company "Deitsia" (Attachments #10,11).

As payment for the ceded right of demand, company "Green Crown Corp." was to receive three promissory notes of nominal value of USD 30,000,000 from Mr. A.V. Boikov.

Thus, the analysis of the materials of the case shows that in the short period of time (from August 22 to August 30, 2005), Mr. A.V. Boikov registered with documents the change of the parties in fictitious delivery agreement #56594-36, dated July 23, 1996 for Limited Liability Company "Infoline", Closed Stock Company "Arctica", Closed Stock Company "Rusactive" and Closed Stock Company "Deitsia" which were under his control.

According to the documents, seized in the course of the investigation, Limited Liability Company "Infoline", Closed Stock Company "Arctica", Closed Stock Company "Rusactive" and Closed Stock Company "Deitsia" did not conduct any economic activities, these companies did not submit accounting balances and consolidated tax reports for 2005 and for the first quarter of 2006.

The fictitious character of the actions of Mr. A.V. Boikov and his criminal intent are confirmed by the fact that he obtained the right of demand under the obligation, which as if had appeared about 10 years before, by paying for it with the promissory notes of unidentified companies of nominal value of USD 30,000,000, that is USD 3,000,000 more than the right that he acquired.

The registration documents of Closed Stock Company "Arctica", Closed Stock Company "Rusactive" and Closed Stock Company "Deitsia" were obtained by Mr. A.V. Boikov and the persons under his control in the period of from August 10 and 11, 2005, these companies had not conducted any economic activities before it, these companies had minimal charter capital which did not exceed RUR 10,000.

At that the appointment of Mr. A.V. Boikov, Mrs. I.V. Lyamicheva and Mr. O.A. Nikonov to be directors of these companies was adopted as if by the Resolution of the sole shareholder—company "Lyons Enterpraise Inc." (registration No 050623913-4008381, address: 2722 Burnley Rd., New Castle Country, Wilmington, DE 19808, USA), in the person of Mr. Aram Voskasyan (Voskanyan) (Attachments #13,14,15).

The appointment of Mrs. O.M. Bobrovnikova to be Director of Limited Liability Company "Infoline" took place as if February 16, 2006 upon the decision of the sole shareholder—company "Iron investment Inc." (registered July 28, 2005, Registration No. 301786-93, address—State of Oregon Secretary of State 5909 SW Southview Palace Portland OR 97219 USA), in the person of Director Andy Spark (Attachment #16).

Furthermore, deliberate non-execution of the peace agreement of Limited Liability Company "Infoline" with Closed Stock Company "Arctica", Closed Stock Company "Rusactive" and Closed Stock Company "Deitsia" on the fictitious debt allowed Mr. A.V. Boikov and other persons to obtain the right illegally from "Sberbank of Russia", in the branches of which the current accounts of Limited Liability Company "Infoline" were opened, to receive the monetary funds in the amount which was equivalent to USD 27,000,000 and which was RUR 834,375,001.28 (834,375,001 roubles 28 kopeek).

At present, taking into account the criminal case, it is necessary to collect evidence in the territory of the United States of America and it is beyond the direct jurisdiction of the Russian Federation.

According to article 74 of the Criminal Procedure Code of the Russian Federation (CPC RF), the evidence in the criminal case is any data, on the basis of which the court, prosecutor, investigator, inquirer shall determine, in the order, defined by the Criminal Procedure Code of the Russian Federation (CPC RF), the presence or absence of the circumstances which shall be proved while conducting the investigation of the criminal case and of other circumstances which are of importance fir the criminal case (Attachment #17).

Taking into account all the above mentioned and being governed solely by the interests to determine the truth in this criminal case according to the agreement on mutual legal assistance in criminal matters between the Russian Federation and the United States of America (Moscow, June 17, 1999) , Prosecutor General's Office of the Russian Federation would like to address the Department of Justice of the United States of America with the request to render the following legal assistance in criminal case #18/377429-06:

1. to seize the following documents in bank "CITIBANK" N.A. (976 Madison Avenue New York, NY 10021 USA):

.-bank cards with the samples of signatures and seals, as well as documents of the bank legal file (the customer's file) of company "Green Crown Corp.", which state about the powers of the Directors and the powers of the trustees to manage the monetary funds at the bank account of the firm;

-fully formatted (with the indication of the dates and numbers of payment documents, names of the banks of the senders and recipients, the senders and recipients themselves, the numbers of their accounts, reasons (purposes) and the amounts of payments) bank statements for account # ▓▓▓▓ of company "Green Crown Corp." for the period of from July 23, 1996 to August 22, 2005, initial (payment (transfer) orders, including those in the system of REUTERS, confirmed by SWIFT) and justifying (agreements, passports of the deals, contracts and etc.) documents which were the bases for movement of the monetary funds at the accounts;

-a file for export and import contracts (agreements) of company "Green Crown Corp."

2. When the seizure of the bank documents of company "Green Crown Corp." is completed, to define the persons who were owners, directors, trustees, managers of the company and who managed its accounts in bank "CITIBANK" N.A." and in case they are found in the territory of the USA, to interrogate them and Mr. Omar Oren, the Director of the Company, using the following questions:

1) Who exactly, where, when, on the basis of what documents, under what circumstances entrusted him (her) with the powers to represent the interests of the company and to conduct financial transactions on behalf of this company?

2) What is the sphere of activities of the company, sources of earning profits, including those, envisaged by the Articles of Incorporation? In what banks and other credit organizations did the company have accounts in the period of from July 23, 1996 to August 22, 2005? Who had the right to dispose of the funds at these accounts?

3) Does he (she) know any of the representatives of Russian companies—Limited Liability Company "Kitano", Limited Liability Company "Infoline", Closed Stock Company "Rusactive", Closed Stock Company "Deitsia", Closed Stock Company "Arctica", Stock Company of the Closed type "Leasing Centre of assistance to entrepreneurship", including with the citizens of Russia—Mr. N.V. Zotov, Mr. I.M. Galaga, mr. S.V. Shimagin, Mrs. E.V. Lyamicheva, Mr. A.V. Boikov, Mr. A.O. Nikonov, Mrs. O.M. Bobrovnikova? If yes, with th

whom exactly, when, where and under what circumstances did they meet? What kind of relations do they have, including business relations?

4) Did company "Green Crown Corp." have commercial relations with company "Forest Group Inc." in the person of Mr. J.Smith, Director, for acquisition of timber processing machines PC 250 HD-6 in the quantity of 64 items in 1996?

5) Did company "Green Crown Corp." purchase the above mentioned timber processing machines and were these machines delivered to the Russian Federation in the address of Stock Company of the Closed type "Leasing Centre of assistance to entrepreneurship" or in the address of Limited Liability Company "Kitano", Limited Liability Company "Infoline"?

6) Were the monetary funds transferred to the accounts of company "Green Crown Corp." from Stock Company of the Closed type "Leasing Centre of assistance to entrepreneurship", Limited Liability Company "Kitano", Limited Liability Company "Infoline" for timber processing machines and if yes, when, what amounts and from what companies were received?

7) Did they visit the city of Moscow in 1996, 2002, 2005 and if yes, what was the exact period of time and what was the purpose of the visit?

3. To determine the persons who are the owners, directors, trustees, managers of company "Lyons Enterpraise Inc." and in case they are in the territory of the United States of America, to interrogate them and Mr. Aram Voskasyan (Voskanyan), the Director, asking the following questions:

1) Who exactly, where, when and on the basis of what documents, under what circumstances empowered her (him) to represent the interests of the company and to conduct the economic functions on behalf of the company?

2) What is the sphere of the activities of the company, the sources of earning profits, including those, envisaged by the Articles of Incorporation?

3) Is company "Lyons Enterpraise inc." the owner of Russian companies - Closed Stock Company "Rusactive", Closed Stock Company "Deitsia", Closed Stock Company "Afreca"?

4) Does he (she) know any of the representatives of Russian Companies—Closed Stock Company "Rusactive", Closed Stock Company "Deitsia", Closed Stock Company "Arctica", including the citizens of Russia—Mrs. I.V. Lyamicheva, Mr.A.V. Boikov, Mr. A.O. Nikonov? If yes, with whom exactly, where, when and under what circumstances did he (she) meet? What kind of relations do they have, including business relations? Were the above mentioned persons appointed Directors of the above mentioned companies upon the decision of "Lyons Enterpraise Inc."?

5) Did Mr. . Aram Voskasyan (Voskanyan) visit the city of Moscow in August 2005, and if yes, in what period of time exactly and with what purpose?

4. To determine the persons who are the owners, directors, trustees, managers of company "Iron Investment Inc." and in case they are in the territory of the United States of America, to interrogate them and Mr. Andy Spark, the Director of the company, asking the following questions:

1) Who exactly, where, when and on the basis of what documents, under what circumstances empowered her (him) to represent the interests of the company and to conduct the economic functions on behalf of the company?

2) What is the sphere of the activities of the company, the sources of earning profits, including those, envisaged by the Articles of Incorporation?

3) Is company "Iron Investment Inc." the owner of Russian company—Limited Liability Company "Infoline"?

4) Does he (she) know any of the representatives of Russian Company—Limited Liability Company "Infoline", including the citizens of Russia—Mrs.O.M. Bobrovnikova, Mr. S.V. Shmagin? If yes, with whom exactly, where, when and under what circumstances did he (she) meet? What kind of relations do they have, including business relations? Was Mrs. O.M. Bobrovnikova appointed Director of Limited Liability Company "Infoline" and was Mr. S.V. Shmagin removed from management of this company according to the decision of "Iron Investment Inc."?

5) Did Mr. Andy Spark visit the city of Moscow in 2005-2006 and if yes, in what period of time exactly and with what purpose?

6) What does he (she) know about the order of formation of the debt of Limited Liability Company "Infoline" before Closed Stock Company "RusActive", Closed Stock Company "Deitsia" and Closed Stock Company "Arctica" in the amount, equivalent to USD 27,000,000 as a result of signing of the correspondent agreement between these companies in the city of Moscow, August 30, 2005?

If it does not contradict the laws of the United States of America, I would like you to adhere to the following procedure while interrogating witnesses-representatives of companies "Green Crown Corp.", "Iron Investment Inc." and "Lyons Enterpraise Inc.":

-please, start the interrogation with the request to the witness to call witness's family name, name and patronymic, the date and place of birth, and the place of actual residence;

-please, explain to the witness that the witness has the right not to answer any questions, the answers to which may be used against this witness;

-please, warn the witness, that the witness may be subject to criminal prosecution if the witness gives false evidence, and that the evidence given by the witness may be used in court as proof;

-then, please, ask the questions which are of interest for the investigation to the witness;

-the course of the interrogation of the witness, explanations and warning made to the witness, the questions asked and the answers to these questions must be recorded in the records of interrogation, and the time, place of the interrogation and the data about the representative of the power who conducted the interrogation, must be indicated there;

-after the records of interrogation is drawn, these records must be submitted to the witness for acknowledgement; at that, it must be explained to the witness that the witness has the right to make remarks about amendments and more precise definitions to be indicated in the records of interrogation;

-all the remarks made by the witness shall be indicated and confirmed by the signatures of the witness and the representative of power;

- the records of interrogation shall be signed by the witness who was interrogated and by the representative of power.

(Notice: The list of the questions, submitted by the investigation is not exhaustive and unchangeable. In the course of investigative actions and depending on the situation, it is possible to correct them without changing the contents.)

We guarantee that the documents, records, minutes and proofs, submitted by the competent bodies of the United States of America after execution of this Request, will be used solely within the frames of the preliminary investigation and court examination of the criminal case, in respect of which the legal assistance is requested, and the originals of the documents, which were seized, would be obligatorily returned when they are no longer needed.

To conduct seizure of the bank documents of legal persons, it is not necessary to hold court procedures according to article 183 of the Criminal Procedure Code of the Russian Federation (Attachment #18).

Taking this into account, Prosecutor General's Office of the Russian Federation would be grateful if the Department of Justice of the United States of America holds the necessary court procedures in order to render legal assistance on the basis of this request and relevant resolutions of the prosecutor's office.

Please, seal the documents which will be received as a result of the execution of this Request with the coat of arms of the competent body.

Please, inform the Russian party about the delay in the execution of this Request and in case of full or partial refusal to render legal assistance.

Please, send the collected documents and proofs at the following address: Bolshaya Dmitrovka street, 15a, Moscow, Russia, GSP-3, 125993 (Telephone: ▮▮▮▮▮ Fax: ▮▮▮▮▮

Please, receive our assurances that according to the principles announced by the agreement on mutual legal assistance in criminal matters, concluded between the Russian Federation and the United States of America, we are always ready to render assistance to our colleagues from the United States of America in collecting evidence in the territories which are under the jurisdiction of the Russian Federation.

We would like to thank you for your cooperation in advance and we confirm our readiness to render all possible assistance in similar applications.

Attachments:

1) A Copy of the Resolution on initiation of criminal case #18/377429-06 on 2 pages;
2) Extract from the Criminal Code of the Russian Federation in part of article 159 on 1 page;
3) A Copy of Delivery Agreement #56594-36 on 10 pages;
4) A copy of certification of the goods on 1 page;
5) A Copy of the Letter of the assistant manager of bank "CITIBANK" N.A." on 1 page;

6) A Copy of the Notice of the Readiness of the goods for delivery on 1 page;

7) A Copy of the Letter in the address of Company "Forest Group Inc." on 1 page;

8) A Copy of the Letter in the address of Company "Green Crown Corp." on 1 page;

9) A Copy of the agreement on the change of the party in delivery agreement #56594-36, dated April 23, 2002, on 1 page;

10) A Copy of Assignment Agreement #30/08, dated August 22, 2005, on 3 pages;

11) A Copy of the Notice to Limited Liability Company "Kitano", dated August 22, 2005, on 1 page;

12) A copy of Agreement #2 on change of the party in delivery agreement #56594-36, dated August 30, 2005, on 1 page;

13) A Copy of the Decision of the sole shareholder of Closed Stock Company "Deitsia", on 1 page;

14) A Copy of Decision of the sole shareholder of Closed Stock Company "RusActive", on 1 page;

15) A Copy of Decision of the sole shareholder of Closed Stock Company "Arctica", on 1 page;

16) A Copy of Decision of the sole shareholder of Limited Liability Company "Infoline", on 1 page;

17) Extract from the Criminal Procedure Code of the Russian Federation in part of article 74 on 1 page;

18) Extract from the Criminal Procedure Code of the Russian Federation in part of articles 182 and 183 on 2 pages;

19) The Resolution of investigator R.A. Belyaev on conduction of seizure of the documents of legal person—company "Green Crown Corp." in bank "CITIBANK" N.A." on 3 pages.

Sincerely Yours,
Investigator of very important cases
Prosecutor General's office
Russian Federation
(Telephone: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

R.A. Belyaev



Translator _____ N.A. _____

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE LETTER OF REQUEST ) | |
| FROM RUSSIA ) | |
| IN THE MATTER OF ) | Misc No. 07- |
| A.V. BOIKOV ) | |

ORDER

Upon application of the United States of America; and upon examination of a letter of request from Russia whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in Russia and the Court being fully informed in the premises, it is hereby

**ORDERED**, pursuant to Title 28, United States Code, Section 1782, that David L. Hall, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from the Russian authorities as follows:

    1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

    2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party shall be required);

    3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in Russia, which procedures may be specified in the request or

provided by the Russian authorities;

    4. seek such further orders of this Court as may be necessary to execute this request; and

    5. certify and submit the evidence collected to the Office of International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Russian authorities.

IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

Dated: This _____ day of _____, 2007.

_____
United States District Court Judge